UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT LITTLEJOHN,

                Plaintiff,

       -v.-

CONSOLIDATED EDISON COMPANY
OF NEW YORK, INC.,

                Defendant.

---

18 Civ. 6336 (KPF)

**<u>OPINION AND ORDER</u>**

KATHERINE POLK FAILLA, District Judge:

      Plaintiff Robert Littlejohn brought this federal lawsuit against his former employer, Defendant Consolidated Edison Company of New York, Inc. ("Con Edison"), alleging claims under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 to 12213, the Rehabilitation Act, 29 U.S.C. §§ 701 to 796, the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290 to 297, and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-131. Broadly, Plaintiff alleged that he was wrongfully terminated from his position at Con Edison in 2016 because of the company's unwillingness to accommodate his serious medical condition. Before filing the lawsuit, however, Plaintiff had filed two union grievances that were consolidated for arbitration, the first of which related to a 2015 disciplinary incident, and the second of which related to his 2016 termination. While this litigation was pending, in October 2018, Plaintiff appeared with counsel and his union representative for the arbitration proceeding, but then entered into a settlement agreement in lieu of arbitration (the "Settlement Agreement").

Defendant has moved to dismiss this case, or alternatively for summary judgment, on the grounds that Plaintiff's claims are barred by the Settlement Agreement and its attendant release provision.  Plaintiff claims that he attempted to revoke his consent to the Settlement Agreement, and that it was not knowingly and voluntarily entered into.  For the reasons discussed in the remainder of this Opinion, Defendant's motion to dismiss is converted to one for summary judgment, and is granted.

## BACKGROUND[1]

### A.   Factual Background

### 1.   Plaintiff's Employment with Con Edison

Plaintiff was employed by Defendant from July 2002 until February 2016.  (Def. 56.1 ¶ 1).  Prior to his employment with Defendant, Plaintiff had

---

[1]    The facts stated herein are drawn from Defendant's Local Rule 56.1 Statement of Material Facts Not in Dispute ("Def. 56.1" (Dkt. #28)); Plaintiff's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1" (Dkt. #30)), which comprises both responses to Defendant's assertions of material facts not in dispute and material facts ostensibly in dispute; and the declarations (cited using the convention "[Name] Decl.") and exhibits thereto submitted with the parties' briefs.

Citations to the parties' Rule 56.1 Statements incorporate by reference the documents and deposition testimony cited therein.  *See* Local Rule 56.1(d).  Generally speaking, where facts stated in a party's Local Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true.  *See* Local Rule 56.1(c), (d); *Biberaj* v. *Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." (internal quotation mark omitted) (quoting *T.Y.* v. *N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009))).

While Plaintiff filed the instant action *pro se*, his Amended Complaint, his memorandum in opposition to the instant motion, and his Local Rule 56.1 Counterstatement of Material Facts were all "prepared with the assistance of the New York Legal Assistance Group Legal Clinic for Pro Se Litigants in the SDNY."  (*See, e.g.*, Pl. Opp. 1 n.1).  Accordingly, the Court will not afford these documents the solicitude normally afforded to *pro se* submissions.  *See Spira* v. *J.P. Morgan Chase & Co.*, 466 F. App'x 20, 22 n.1 (2d Cir. 2012) (summary order); *Ibrahim* v. *United States*, 868 F. Supp. 2d 27, 29 (E.D.N.Y. 2012); *see generally Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

obtained a high school equivalency diploma and had served in the United States Navy. (*Id.* at ¶ 2). At Con Edison, Plaintiff first worked as a General Utility Worker until he was promoted to the position of Distribution Mechanic. (*Id.* at ¶ 3).

###    2.    Plaintiff's Medical Issues

In 2011, while working at Con Edison, Plaintiff was diagnosed with a serious heart condition. (Def. 56.1 ¶ 4). As a result of that medical condition, in September 2015, Plaintiff's physician determined that it was unsafe for Plaintiff to lift more than 20 pounds. (*Id.* at ¶ 7). Due to the lifting restriction, Plaintiff was unable to perform an essential function of his position as a Distribution Mechanic. (*Id.* at ¶ 9). In addition, Plaintiff was ineligible for Con Edison's retraining program because of a prior suspension from work in February 2015. (*Id.* at ¶¶ 10-11).

On September 2, 2015, Plaintiff accepted a three-month unpaid leave of absence from Con Edison. (Def. 56.1 ¶ 13; Pl. Decl., Ex. A). The leave period was designed "to allow [Plaintiff] address [his] medical condition and possible return to duty." (Pl. Decl., Ex. A). However, when Plaintiff was reevaluated in January 2016, it was determined that there had not been any significant change in Plaintiff's condition. (Def. 56.1 ¶ 14; Pl. Decl., Ex. A). Shortly

---

For convenience, Defendant's supporting brief (Dkt. #27) will be referred to as "Def. Br."; Plaintiff's opposition brief (Dkt. #30) as "Pl. Opp."; and Defendant's reply brief (Dkt. #32) as "Def. Reply." Additionally, the Settlement Agreement will be referred to as "SA" and the transcript of the parties' November 6, 2018 conference with the Court will be referred to as "Tr."

thereafter, Plaintiff was terminated from his position at Con Edison.  (Def. 56.1 ¶ 15; Pl. Decl., Ex. A).

In a letter to Plaintiff, Defendant stated that Plaintiff was being terminated because he remained unable to perform the essential functions of his position, even with a reasonable accommodation.  (Def. 56.1 ¶ 15; Pl. Decl., Ex. A).  Furthermore, Defendant claimed there were no other available positions in the company for which Plaintiff was qualified.  (*Id.*).  Plaintiff argues that Defendant did not attempt to find a reasonable accommodation for him and that there were, and remain, vacant alternative employment opportunities at Con Edison for which Plaintiff is qualified.  (Pl. 56.1 ¶ 15; Compl. ¶¶ 16, 18).

## B.    Procedural History

### 1.    The Grievances

Plaintiff proceeded to file a grievance over his termination.  (Def. 56.1 ¶ 16).  That grievance was consolidated with a grievance that Plaintiff had previously filed over his 2015 suspension.  (*Id.*).  An arbitration hearing in the matter was scheduled for October 18, 2018.  (*Id.*).  During this process, Plaintiff was represented by Allyson Belovin, counsel for Plaintiff's union.  (*Id.* at ¶ 17; Pl. Decl. ¶ 3).

### 2.    The Lawsuit

Plaintiff filed the instant lawsuit on July 12, 2018.  (Dkt. #2).  On October 12, 2018, Defendant requested leave to file a motion to dismiss, asserting various pleading deficiencies with Plaintiff's complaint.  (Dkt. #10).

The Court scheduled a pre-motion conference to be held on November 6, 2018. (Dkt. #22).

### 3.    The Arbitration Proceeding and the Settlement Agreement

While the lawsuit was pending, the parties prepared for the scheduled arbitration.  On September 24, 2018, Attorney Belovin contacted Moira Fitzgerald, counsel for Defendant, and asked whether Defendant would be interested in settling the dispute.  (Def. 56.1 ¶ 17).  Ms. Belovin proposed that Con Edison either grant Plaintiff long-term disability benefits or reinstate him as an employee in some capacity.  (*Id.*).  In response, and in order to assess Plaintiff's ability to work, Ms. Fitzgerald asked for Plaintiff's current medical records.  (*Id.*).

As requested, on October 12, 2018, Ms. Belovin sent Ms. Fitzgerald a report from Plaintiff's cardiologist.  (Def. 56.1 ¶ 18).  The report, which was dated May 10, 2018, and discussed the results of a March 6, 2018 echocardiogram, stated that Plaintiff "is employable," with the only restriction being that he could not lift over 50 pounds.  (*Id.*).  Defendant asserts that such a lifting restriction would not prevent Plaintiff from working as a Mechanic for Con Edison.  (*Id.* at ¶ 19).

On October 18, 2018, at 9:00 a.m., the parties met for the scheduled arbitration.  (Def. 56.1 ¶ 20).  Ms. Fitzgerald told Ms. Belovin that Con Edison was willing to offer Plaintiff reinstatement to the position of Mechanic, in return for a general release of all claims against the company.  (*Id.*).  Ms. Belovin then conferred with Plaintiff and Frank Morales, Plaintiff's union representative,

regarding the settlement offer for approximately one hour.  (*Id.*).  Plaintiff

claims that he "was informed by [his] union representatives and Ms. Belovin of

the basic terms of [the] proposed settlement of [his] grievances, but no details."

(Pl. Decl. ¶ 5).  After meeting with Plaintiff, Ms. Belovin asked Ms. Fitzgerald for

a written version of the agreement.  (Def. 56.1 ¶ 21; Pl. Decl. ¶ 5).  Ms.

Fitzgerald e-mailed the Settlement Agreement to Ms. Belovin at approximately

11:12 a.m.  (Def. 56.1 ¶ 22).

The parties agree that, upon receipt of the written agreement, Plaintiff

met with Ms. Belovin and Mr. Morales for an additional hour.  (Def. 56.1 ¶ 23;

Pl. Decl. ¶ 6).  As expected, the Settlement Agreement reinstated Plaintiff to his

position at Con Edison, conditioned upon the successful completion of a

physical exam.  (SA 1).  According to Plaintiff, Ms. Belovin tried to "persuade"

him to sign the Agreement, "during which time [he] browsed through the

agreement for only a couple of minutes, without any explanation of its terms[.]"

(Pl. Decl. ¶ 6).  During this meeting, Plaintiff "felt extremely pressured to accept

the agreement."  (*Id.* at ¶ 7).  Ms. Belovin told him that the proposed settlement

was a "good deal," and that she "did not want to take [his] grievances through

an arbitration proceeding."  (*Id.*).  Further, she advised Plaintiff that he could

revoke the Agreement within seven days, pursuant to the Older Workers

Benefit Protection Act (the "OWBPA").  (*Id.*; Tr. 18:19-19:03).

After the additional hour of discussion with his counsel and union

representative, Plaintiff accepted Defendant's settlement offer.  (Def. 56.1 ¶ 23).

The Arbitrator read the Settlement Agreement and asked Plaintiff whether he

understood its terms, but did specifically go over those terms with Plaintiff.  (*Id.* at ¶ 24; Pl. Decl. ¶ 10).  Plaintiff replied that he did understand the terms and proceeded to sign the Settlement Agreement.  (Def. 56.1 ¶ 24).  The next day, a Con Edison General Manager signed the Agreement on behalf of the company, and the fully-executed Agreement was sent to Ms. Belovin.  (*Id.* at ¶ 25).

### 4.     The Attempt at Revocation

After signing the Settlement Agreement on October 18, 2018, Plaintiff went home and "had time to read the agreement carefully."  (Pl. Decl. ¶ 11).  According to Plaintiff, it is at that point that he realized that the Agreement required him to pass a physical exam in order to be reinstated to his position at Con Edison.  (*Id.*).  Previously unaware of this requirement, Plaintiff confirmed with Ms. Belovin the next day that he could revoke the Agreement.  (*Id.*).

On October 23, 2018, Ms. Belovin called Ms. Fitzgerald to tell her that Plaintiff had revoked the Settlement Agreement under the OWBPA.  (Def. 56.1 ¶ 27).  In Plaintiff's own words, he revoked the Settlement Agreement because "a clause in the contract requires me to qualify for a … fitness test which [I'm] not going to pass because of lifting restrictions by my doctor."  (Def. Br., Ex. C).[2]  Ms. Fitzgerald informed Ms. Belovin that Plaintiff had no right to revoke the Settlement Agreement and that Con Edison considered the

---

[2]     In a declaration submitted in support of his opposition, Plaintiff avers that "[m]y physicians have never imposed any 'lifting restriction' upon me with regard to my work at Con Edison."  (Pl. Decl. ¶ 13).  The Court questions, therefore, why Plaintiff continues to claim that he would be unable to pass the requisite physical examination.

agreement final, binding, and fully enforceable.  (*Id.* at ¶ 28).  Subsequently,
Con Edison informed Plaintiff that his reinstatement physical exam was
scheduled for December 4, 2018.  (*Id.* at ¶ 29).  Plaintiff failed to appear for the
appointment and has made no attempt to reschedule.  (*Id.*).

### 5.    The Instant Motion

As noted, Plaintiff initiated this suit on July 12, 2018.  (Dkt. #2).  After
the pre-motion conference on November 6, 2018 (Dkt. #22), the Court granted
Plaintiff leave to amend his complaint, and he filed the Amended Complaint on
November 28, 2018 (Dkt. #18).  On January 11, 2019, Defendant moved to
dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or
alternatively, for summary judgment pursuant to Rule 56.  (Dkt. #24-28).
Plaintiff filed an opposition brief and a declaration in support of his opposition
on February 11, 2019.  (Dkt. #30).  This motion became fully briefed when
Defendant filed its reply brief on March 1, 2019.  (Dkt. #31).

DISCUSSION

## A.    Applicable Law

### 1.    Motions Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil
Procedure 12(b)(6), a court must "draw all reasonable inferences in [the
plaintiff's] favor, assume all well-pleaded factual allegations to be true, and
determine whether they plausibly give rise to an entitlement to relief."  *Faber* v.
*Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks
omitted).  Thus, "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'"  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).

   "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing documents that a court may properly consider on a motion to dismiss).

### 2.    Conversion of a Rule 12(b)(6) Motion Into a Rule 56 Motion

   On January 11, 2019, Defendant filed its motion as a motion to dismiss, or in the alternative, for summary judgment.  (Dkt. #24).  In support of the latter application, Defendant submitted a Statement of Material Facts Pursuant

9

to Local Civil Rule 56.1 (Dkt. #28), along with two declarations and several exhibits (Dkt. #25, 26).  In response, Plaintiff submitted a Statement of Facts Pursuant to Local Civil Rule 56.1, one declaration, and one exhibit.  (Dkt. #30).

A district court may convert a motion to dismiss into a motion for summary judgment when the motion presents matters outside the pleadings, provided that the court gives "sufficient notice to an opposing party and an opportunity for that party to respond." *Groden* v. *Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995); *accord Parada* v. *Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 (2d Cir. 2014).  "The essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Malaney* v. *Elal Israel Airlines*, 331 F. App'x 772, 774 (2d Cir. 2009) (summary order).[3]

For several reasons, the Court finds that Plaintiff was on notice of the possible conversion of the motion and had an opportunity to respond.  *First*, Defendant filed an alternative motion to dismiss or for summary judgment on the pleadings (Dkt. #24), and provided notice to Plaintiff under Local Civil Rule 12.1 (Dkt. #29).  *See Cantey* v. *Mount Vernon City Sch. Dist.*, No. 16 Civ. 2669 (NSR), 2018 WL 3315574, at *4 (S.D.N.Y. July 5, 2018) ("Defendants'

---

[3]      Such notice is "particularly important" for *pro se* litigants, who must be "unequivocal[ly]" informed "of the meaning and consequences of conversion to summary judgment." *Hernández* v. *Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quotation marks omitted).  However, as noted above, Plaintiff has received the assistance of counsel in connection with the instant motion.

filing of their moving papers together with notice to a *pro se* litigant pursuant to Local Civil Rule 12.1 has regularly been considered sufficient notice for purposes of Rule 12(d).").  *Second*, Plaintiff submitted a declaration and Rule 56.1 Counterstatement.  *See Inside Connect, Inc.* v. *Fischer*, No. 13 Civ. 1138 (CS), 2014 WL 2933221, at *7 (S.D.N.Y. June 30, 2014) ("Plaintiff's submission of a Rule 56.1 Statement of Material Facts seems to defeat any argument that Plaintiff would be taken by surprise if the motion were converted to a motion for summary judgment.").

Plaintiff's claim that the Court should not convert the motion without giving him the "opportunity to conduct discovery concerning the circumstances surrounding the negotiation and execution of the settlement and agreement and release" — which claim the Court understands as an application under Federal Rule of Civil Procedure Rule 56(d) — does not alter the Court's analysis.  (Pl. Opp. 4).  Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  Discussing the analytically-similar predecessor rule to Rule 56(d), Rule 56(f), the Second Circuit instructed that:

> A court can reject a request for discovery, even if properly and timely made through a Rule 56(f) affidavit, if it deems the request to be based on speculation as to what potentially could be discovered.  "Rule 56(f) is not a shield against all summary judgment motions. Litigants seeking relief under the rule must show that

> the material sought is germane to the defense, and that
> it is neither cumulative nor speculative," and a "'bare
> assertion' that the evidence supporting a plaintiff's
> allegation is in the hands of the defendant is insufficient
> to justify a denial of a motion for summary judgment
> under Rule 56(f)."

*Paddington Partners* v. *Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) (citations omitted); *accord Alphonse Hotel Corp.* v. *Tran*, 828 F.3d 146, 151 (2d Cir. 2016); *see generally Nationwide Sales & Servs. Inc.* v. *Envirocare Techs. Int'l, Ltd.*, No. 16 Civ. 6617 (GRB), 2018 WL 2436969, at *8 (E.D.N.Y. May 30, 2018) (collecting cases under Rules 56(d) and 56(f) where the Second Circuit has found affidavits to be insufficient).

Here, Plaintiff did not submit an affidavit regarding his discovery request despite having received a notice under Local Civil Rule 12.1 that included the full text of Rule 56.  "[T]he failure to file such an affidavit is fatal to a claim such as [P]laintiff makes here even if the party resisting the motion for summary judgment alluded to a claimed need for discovery in a memorandum of law."  *Gurary* v. *Winehouse*, 190 F.3d 37, 43-44 (2d Cir. 1999) (internal quotations and citations omitted).

In the alternative, as a separate and independent basis for denial, Plaintiff's briefing did not provide the information necessary under Rule 56(d). Instead, Plaintiff states in general, conclusory terms that he should be "allowed to explore and develop" the facts concerning "whether Plaintiff knowingly and voluntarily agreed to waive his federal claims of employment discrimination." (Pl. Opp. 2).  However, a "bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a

denial of a motion for summary judgment under [Rule 56(d)]." *Paddington Partners*, 34 F.3d at 1138 (internal citations and quotations omitted). Accordingly, the Court converts Plaintiff's motion to dismiss to one for summary judgement and denies Plaintiff's Rule 56(d) application for discovery.[4]

### 3.     Motions for Summary Judgment Under Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[5] A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).

---

[4]     This standard applies with equal force to *pro se* litigants. *Lunts* v. *Rochester City Sch. Dist.*, 515 F. App'x 11, 13-14 (2d Cir. 2013) (summary order) (affirming grant of summary judgment against *pro se* plaintiffs because their sworn affidavits were insufficient under 56(d) and they did not identify any "potentially discoverable evidence that would have raised a genuine issue of material fact as to any of their claims"); *see also Falso* v. *Rochester City Sch. Dist.*, 460 F. App'x 60, 61-62 (2d Cir. 2012) (summary order) (affirming denial of Rule 56(d) relief for *pro se* plaintiff because he did not submit affidavit sufficiently describing facts he sought to discover).

[5]     The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact. *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination."). This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  The movant may discharge its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party failed to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings.  *Anderson*, 477 U.S. at 248; see also *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  In other words, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the

movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).  However, in considering "what may reasonably be inferred" from witness testimony, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (citing *County of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)).

## B.     The Settlement Agreement Bars Plaintiff's Claims

### 1.     Applicable Law

Plaintiff's release of his federal claims is valid if such a waiver is both knowing and voluntary.  *See Bormann* v. *AT & T Commc'ns, Inc.*, 875 F.2d 399, 402 (2d Cir. 1989).  To assess whether waiver was knowing and voluntary, courts consider the following factors, set forth by the Second Circuit in *Bormann*:

> (1) The plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the plaintiff was represented by or consulted with an attorney; (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law; (7) whether the employer encouraged or discouraged the employee to consult an attorney; and (8) whether the employee had a fair opportunity to do so.

*Cantey*, 2018 WL 3315574, at *6 (citing *Bormann*, 875 F.2d at 403).

The *Bormann* factors "are neither exhaustive nor must all of the factors be satisfied before a release is enforceable."  *Cantey*, 2018 WL 3315574, at *6

15

(internal citations and quotations omitted).  "The essential question is a pragmatic one: whether, in the totality of the circumstances, the individual's waiver of his right can be characterized as knowing and voluntary."  *Laniok* v. *Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1368 (2d Cir. 1991).  "Courts have also considered plaintiffs' assertions of duress and undue influence as additional 'factors' in the totality of the circumstances." *Westbrooke* v. *Bellevue Hosp. Ctr.*, No. 16 Civ. 9845 (RA), 2018 WL 4189514, at *4 (S.D.N.Y. Aug. 31, 2018).

The release of Plaintiff's New York State and City law claims are subject to less stringent, ordinary principles of contract law.  *See Loksen* v. *Columbia Univ.*, No. 12 Civ. 7701 (CM), 2013 WL 5549780, at *5 (S.D.N.Y. Oct. 4, 2013) ("[R]ather than looking at the 'totality of the circumstances,' New York law relies on principles of contract law, a standard that is less stringent than the one that applies to the waiver of discrimination claims under federal law.").  As a result, when a release is voluntary and knowing under the federal *Bormann* standard, it will necessarily satisfy the state and city law standard.  *See id.* at *6.

## 2. The Settlement Agreement Qualifies as Knowing and Voluntary Under the Federal Standard

Here, the balance of the *Bormann* factors tips decidedly in Defendant's favor.  Two of those factors are undisputed, and therefore easily decided.  *First*, Plaintiff does not dispute that the consideration given in exchange for the waiver exceeds employee benefits to which he was already entitled by contract

16

or law, the sixth factor in the *Bormann* analysis.  (*See generally* Pl. Opp.).[6]

*Second*, in its reply brief, Defendant does not dispute the third *Bormann* factor,

that Plaintiff was not directly involved in deciding the terms of the Settlement

Agreement.  (*See* Def. Reply 7).[7]  As a result, the Court finds that the third and

sixth factors favor Plaintiff and Defendant, respectively.  The Court now turns

to the remaining *Bormann* factors and concludes that no genuine dispute of

material fact exists regarding whether Plaintiff knowingly and voluntarily

entered into the settlement agreement.

### a.    The Settlement Agreement Is Clear and Unambiguous

The Court begins with the fourth *Bormann* factor, because "the relative

clarity of the agreement may be the most important."  *Westbrooke*, 2018 WL

4189514, at *4.  A contract "is unambiguous when [the contract language] has

'a definite and precise meaning, unattended by danger of misconception in the

purport of the [contract] itself, and concerning which there is no reasonable

basis for a difference of opinion.'"  *Revson* v. *Cinque & Cinque, P.C.*, 221 F.3d

---

[6]    The reinstatement of Plaintiff to his position of Mechanic with Con Edison was valid consideration for his waiver of claims.  (SA 1).  *See Khadaroo* v. *New York Presbyterian Hosp.*, No. 10 Civ. 1237 (CM) (RLE), 2012 WL 893180, at *5 (S.D.N.Y. Mar. 15, 2012); *see also In re OCA Interpreters Litig.*, No. 10 Civ. 7356 (PAC) (FM), 2013 WL 3733382, at *12 (S.D.N.Y. July 16, 2013) (providing plaintiffs with the opportunity to pass assessment exams needed to maintain their jobs qualifies as valuable consideration), *report and recommendation adopted*, No. 10 Civ. 7356 (PAC) (FM), 2013 WL 5312506 (S.D.N.Y. Sept. 10, 2013), *aff'd sub nom. Seck* v. *Office of Court Admin.*, 582 F. App'x 47 (2d Cir. 2014) (summary order).  In addition, at the time Plaintiff signed the settlement agreement, his medical records indicated that he would be able to pass the physical exam and perform the position of mechanic.  (Def. 56.1 ¶¶ 18-19).

[7]    Construing the facts in the light most favorable to Plaintiff, the Court accepts Plaintiff's representation that he "had no input or role in negotiating [the settlement agreement's] terms."  (Pl. Decl. ¶ 9).  Further, Plaintiff states that "[t]here was no discussion of changing any of the terms of the agreement," and that "[t]he settlement agreement was never changed after we received it from Con Edison.  (*Id.*).

59, 66 (2d Cir. 2000) (quoting *Hunt Ltd.* v. *Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)).

Here, the relevant provisions of the two-page Settlement Agreement were clear and unambiguous, as Plaintiff confirmed to the Arbitrator upon signing the Agreement.  The first substantive paragraph of the Agreement is entitled, "Reinstatement," and it clearly lists the conditions of reinstatement, including "a reinstatement physical examination administered by the Company's Employee Wellness Center."  (SA 1).  Three paragraphs later, but still on the first page, the Agreement specifies that Plaintiff "must successfully complete the GUW Physical Abilities Test for Electric Operations ... and obtained a Class B Commercial Driver's License.  (*Id.*).  In the carryover paragraph, Plaintiff and his union agree to withdraw the pending grievances and not to file new grievances or litigation claims.  (*Id.*).

On the second page of the Agreement, the release plainly states:

> [T]he Employee and the Union hereby irrevocably and unconditionally waive and release the Company from any and all claims that the Employee or the Union has or could have brought against the Company relating to the Employee, up through the effective date of this Agreement.  *It is understood between the parties that this release includes all claims relation to the Employee which were or could have been brought under any federal, state or local law and regulation.*

(SA 2 (emphasis added)).  Written in plain English, the release clearly covers any claims that Plaintiff could have brought "up through the effective date of this Agreement."  (*Id.*).  Because Plaintiff had been fired more than two years prior to signing the release — and had allegedly not been offered reasonable

18

accommodations prior to that — it would have been unreasonable for Plaintiff to believe that the general release did not cover the circumstances of his firing.

Plaintiff argues that the release is not clear and unambiguous because "it employs the language that is found in a standard-form general release." (Pl. Opp. 5). Instead, Plaintiff asserts, courts "find 'clarity' where the release employ[s] language that explicitly and specifically identifies the claims to be released." (*Id.*). However, no such rule requires that a release must be narrow in order to be clear. To the contrary, "Courts have consistently found such [general] language to unambiguously bar plaintiffs from later bringing any claims ... against former employers." *Cantey*, 2018 WL 3315574, at *7 (enforcing general waiver releasing "all claims which were or could have been alleged up until the date of execution of this Agreement"); *see also Smith* v. *JPMorgan Chase*, No. 15 Civ. 808 (PAE), 2016 WL 5339548, at *6 (S.D.N.Y. Sept. 23, 2016) (collecting cases). The Settlement Agreement's waiver provision thus clearly and unambiguously applies to, and therefore bars, Plaintiff's current claims.

<blockquote><b>b. Plaintiff Has Sufficient Education and Business Experience to Understand the Terms of the Settlement Agreement</b></blockquote>

The next factor, Plaintiff's education and business experience, also supports a finding that the Settlement Agreement (more specifically, its waiver provision) was knowing and voluntary. Plaintiff has no formal education beyond a GED and has "never held a job that required any knowledge of legal or business practices." (Pl. Decl. ¶ 2). However, given Plaintiff's significant

work experience, which includes 13 years at Con Edison, the Court may infer that he is capable of understanding the terms of the Settlement Agreement. *See Espinal* v. *Trs. of Columbia Univ. in the City of New York*, No. 16 Civ. 4100 (CM), 2016 WL 6561406, at *3 (S.D.N.Y. Oct. 24, 2016) (explaining that plaintiff who, since receiving his GED, has "always held low-level positions and never held a managerial or supervisory role," had a sufficient level of education); *see also Bachiller* v. *Turn On Prods., Inc.*, No. 00 Civ. 8701 (JSM), 2003 WL 1878416, at *4-5 (S.D.N.Y. Apr. 14, 2003) (holding that a plaintiff with a high school equivalency degree working as an accounts payable clerk was capable of understanding an agreement).

### c. Plaintiff Did Not Have Sufficient Time to Review the Settlement Agreement

The second *Bormann* factor, the amount of time Plaintiff had to review the agreement, narrowly cuts against Defendant.  Plaintiff states that he had "approximately one hour" to review the written Settlement Agreement, although he elected to "browse[] through the agreement for only a couple of minutes." (Pl. Decl. ¶ 6).  Of course, the Court's analysis considers the amount of time a plaintiff had possession of or access to the agreement before signing it, not how much time a plaintiff actually decided to devote to the review.  *See Bormann*, 875 F.2d at 403.

When deciding this factor, courts in this District have concluded that "even a few hours can suffice."  *Mandavia* v. *Columbia Univ.*, No. 12 Civ. 2188 (JPO), 2013 WL 2391695, at *7 (S.D.N.Y. June 3, 2013) ("*Mandavia II*"), *aff'd*, 556 F. App'x 56 (2d Cir. 2014) (summary order).  However, when a plaintiff

feels "pressured into making a decision on the spot," "a mere hour of review sets the bar too low," and is not enough time to review a "document [that] is only one page and is relatively unambiguous." *Mandavia* v. *Columbia Univ.*, 912 F. Supp. 2d 119, 130 (S.D.N.Y. 2012) ("*Mandavia I*"), *aff'd*, 556 F. App'x 56 (2d Cir. 2014) (summary order). Given this precedent, the Court cannot find that this factor favors Defendant.

At the same time, when evaluating this factor, the Court must consider whether there was a period of time that Plaintiff was aware of the basic terms of the agreement, prior to receiving the written version. *See Mandavia II*, 2013 WL 2391695, at *7 (noting that two hours was a sufficient amount of time to review a settlement agreement when some of the terms may have been known to the plaintiff for nearly two weeks). Although Plaintiff only had one hour to review the written agreement, he was notified of its basic terms several hours earlier on the morning of the arbitration hearing. (Def. 56.1 ¶ 7; Pl. Decl. ¶ 5). In addition, Plaintiff was presumably aware of the general terms as early as September 24, 2018 — nearly three weeks prior to the arbitration — when his attorney initially proposed those terms to Con Edison. (Def. 56.1 ¶ 17). For that reason, the Court cannot unreservedly hold that the second *Bormann* factor favors Plaintiff, but does so in large part as a result of crediting — as it must in this procedural context — Plaintiff's statements that he felt pressured to sign the Settlement Agreement.

### d.   Plaintiff Was Represented by an Attorney

On the day of the arbitration hearing, Plaintiff was represented by union attorney Ms. Belovin and union representative Mr. Morales.  (Def. 56.1 ¶ 20).  Representation by either Ms. Belovin or Mr. Morales would be enough to satisfy the fifth *Bormann* factor.  *See, e.g., Khadaroo* v. *New York Presbyterian Hosp.*, No. 10 Civ. 1237 (CM) (RLE), 2012 WL 893180, at *5 (S.D.N.Y. Mar. 15, 2012) (enforcing waiver when plaintiff was represented by her union); *see also Kwok* v. *N.Y.C. Transit Auth.*, No. 99 Civ. 2281 (JSM), 2001 WL 829876, at *5 (S.D.N.Y. July 23, 2001) (plaintiff represented by union counsel).  Further, because Plaintiff was represented by counsel, the seventh and eighth *Bormann* factors — whether the employer encouraged or discouraged the employee to consult an attorney, and whether the employee had a fair opportunity to do so — are redundant and answered in the affirmative.  *See Laramee* v. *Jewish Guild for Blind*, 72 F. Supp. 2d 357, 361 (S.D.N.Y. 1999).

However, although Plaintiff concedes that he was represented by counsel and explicitly acknowledged by signing the Settlement Agreement "that he has been fully and fairly represented by the Union" (SA 2), Plaintiff now challenges the quality of that representation (*see* Pl. Opp. 6-7).  Plaintiff argues that Ms. Belovin and Mr. Morales failed to provide him accurate legal advice, and pressured him into signing the Agreement.  The Court addresses each argument in turn.

*First*, Plaintiff contends that Ms. Belovin told him that he could revoke the Settlement Agreement within seven days, pursuant to the OWBPA.  (Pl.

22

Decl. ¶ 7; Tr. 18:19-19:03).  However, no provision in the Agreement allows (or could be misinterpreted to allow) Plaintiff to withdraw his consent, and the OWBPA does not apply to Plaintiff's discrimination claims.  (Def. 56.1 ¶ 28).[8] Defendant does not dispute that Plaintiff received inaccurate legal advice.  Even with that concession, the advice that Plaintiff challenges does not automatically foreclose his Plaintiff's knowing and voluntary acceptance of the waiver.  *See Bradley* v. *TIAA-CREF,* No. 04 Civ. 2434 (RCC) (KNF), 2005 WL 2709177, at *4 (S.D.N.Y. Oct. 20, 2005) (upholding waiver when plaintiff's attorney incorrectly "informed him that he could sign the Release and still pursue his legal rights").

On this point, Judge Engelmayer's decision in *Smith* v. *JPMorgan Chase* is instructive.  No. 15 Civ. 808 (PAE), 2016 WL 5339548, at *8 (S.D.N.Y. Sept. 23, 2016).  In that case, the plaintiff signed a waiver, releasing her former employer from "any and all claims."  *Id.* at *2.  The *Smith* plaintiff later argued that her lawyer misrepresented the scope of the release, and advised her that she could still pursue her charge of discrimination.  *See id.* at *8.  The court rejected that argument, holding that "the release was knowingly and voluntarily entered into — notwithstanding the alleged misrepresentation."  *Id.* (citing *Pampillonia* v. *RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir. 1998)).

---

[8]     The OWBPA amended the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. ch. 14, to specify that releases or waiver of ADEA claims are not knowing and voluntary unless, among other things, "the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired."  29 U.S.C. § 626(f)(1)(G).  Plaintiff did not bring age-discrimination claims in his grievances or in this litigation.

Here too, the plain language of the Settlement Agreement clearly states that Plaintiff "irrevocably and unconditionally" waives and releases Con Edison from "any and all claims." (SA 2). Nowhere does the Agreement indicate that Plaintiff may withdraw his "irrevocable" consent. Accordingly, "Plaintiff cannot avoid the consequences of this provision by claiming that [he] was misled as to its scope or dissatisfied with the advice [he] received from [his] attorney." *Smith*, 2016 WL 5339548, at *8.

*Second*, Plaintiff contends that he "felt extremely pressured to accept the agreement," after "Ms. Belovin repeatedly told [him] that she did not want to take [his] grievance through an arbitration proceeding." (Pl. Decl. ¶ 7). While Plaintiff does not specifically allege duress or undue influence, the Court construes his argument liberally as addressing these supplemental *Bormann* factors.

Even accepting Plaintiff's statements that Ms. Belovin and Mr. Morales pressured him into signing the agreement as true, Plaintiff's allegations do not provide a basis to invalidate the waiver. Critically, to succeed on a claim of duress or undue influence, "a plaintiff must demonstrate that the difficult circumstances she faces are a result of the *defendant's* actions." *Kramer* v. *Vendome Grp. LLC*, No. 11 Civ. 5245 (RJS), 2012 WL 4841310, at *6 (S.D.N.Y. Oct. 4, 2012) (emphasis added). "Duress by other than the opposing party to a contract cannot constitute compulsion sufficient to void the contract." *Evans* v. *Waldorf-Astoria Corp.*, 827 F. Supp. 911, 914 (E.D.N.Y. 1993), *aff'd*, 33 F.3d 49 (2d Cir. 1994). Plaintiff's claim, construed liberally by the Court, is that he

24

was coerced by his own attorney to sign the Settlement Agreement, not by Defendant.  But this Court's analysis supports a finding that the Settlement Agreement was knowingly and voluntarily entered into.[9]

In sum, the Court finds that six of the eight *Bormann* factors support Defendant and strongly militate in favor of granting Defendant's motion for summary judgment.  Applying the totality of the circumstances test to this case, the Court concludes that no reasonable jury could find that Plaintiff did not knowingly and voluntarily waive his right to continue this lawsuit.  Indeed, there is no material dispute of fact in this regard.  As discussed *supra*, the record makes clear that the impetus for the settlement came from Plaintiff's counsel, and that terms of the Settlement Agreement replicate those suggested by Plaintiff's counsel on September 24, 2018.  Three weeks later, when the Settlement Agreement was prepared, Plaintiff had one hour to discuss its substance with his counsel and union representative, followed by one hour to discuss its specific terms with them.  Plaintiff was asked by the Arbitrator if he understood the terms of the Settlement Agreement, and Plaintiff responded in the affirmative as he signed it.  With respect to the relevant legal issues, there is nothing in the Settlement Agreement that hints at the revocation period that Plaintiff claims now to have understood he had.  And with respect to the relevant factual issues, Plaintiff has not substantiated — but rather in his opposition has refuted — any claim that the Settlement Agreement provided

---

[9]     The Court notes that Plaintiff has not brought any claims against Ms. Belovin or Mr. Morales, and therefore does not address the issue.

25

only an illusory benefit because he could not pass the physical examination. There is nothing in the record to suggest that Plaintiff could not pass the examination. All of that said, given the confusion that Plaintiff has suggested in his submissions to the Court, the Court would hope and expect that Defendant would, if Plaintiff requested, set a new deadline within which Plaintiff could satisfy the requirements for reinstatement at Con Edison. Summary judgment is granted in Defendant's favor on Plaintiff's federal claims.

Finally, because the Settlement Agreement satisfies the federal standard, it automatically satisfies the less stringent state and city law standard. *Loksen*, 2013 WL 5549780, at *5. Accordingly, summary judgment is also granted in Defendant's favor as to Plaintiff's state and local claims.

## CONCLUSION

For the reasons stated in this Opinion, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     July 16, 2019
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

26